UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**LAURIE RENEE RUBIN,**

   Plaintiff,

v.                                         **No. 4:24-cv-00005-P**

**CARVI'S CUSTOM PAINTING, LLC,**

   Defendant.

## MEMORANDUM ORDER & OPINION

Before the Court is Plaintiff's Motion for Default Judgment. ECF No. 16. Having considered the Motion, exhibits, and applicable law, the Court concludes the Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Laurie Rubin is a freelance photographer whose works have been featured in numerous nationally prominent publications. Carvi's Custom Painting is a local painting service. Carvi's displayed one of Rubin's photographs (the "Work") on its website without permission. Rubin had previously registered copyrights in the Work on April 6, 2007. Rubin discovered Carvi's unauthorized use, so she sued for willful infringement this past January. Though Rubin perfected service, Carvi's never responded to the Complaint. At Rubin's request, the Clerk of the Court entered Carvi's default on February 28, 2024. The Court ordered Rubin to move for default judgment by June 28, 2024, bringing us here.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgments. If a defendant fails to "plead or otherwise defend" against a claim, the Clerk must enter default upon a requisite showing from the plaintiff. *See* FED. R. CIV. P. 55(a). If damages are readily calculable, the Court may enter default judgment upon timely motion from the plaintiff without

conducting a hearing. *See id.* at 55(b). Still, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (cleaned up).

Consistent with Fifth Circuit policy favoring judgments on the merits, default judgments are highly disfavored. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The default-judgment analysis is three-pronged. *First*, the Court asks if default judgment is procedurally proper. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).[1] *Second*, the Court "assess[es] the substantive merits of the plaintiff's claim and determine[s] whether there is a sufficient basis in the pleadings for the judgment." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015) (noting default judgments "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings" (cleaned up)). *Third*, the Court determines what relief is proper. *See Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002). In doing so, the Court assumes the plaintiff's uncontested allegations are true, except those regarding damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## ANALYSIS

As noted above, the Clerk entered Carvi's default on February 28 and Rubin moved for default judgment on June 28. *See* ECF Nos. 10, 16. But default judgments are highly disfavored. *See Sun Bank of Ocala*, 874 F.2d at 276. Thus, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis*, 236 F.3d at 767. Accordingly, the Court must still determine

---

[1] The Court answers this question with an eye toward six considerations: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the Court would think itself obliged to set aside the default on the defendant's motion." *Id.*

2

whether default judgment is warranted for Rubin's claims against Carvi's. As explained below, it is.

### A.   Default judgment is procedurally proper.

Because default judgments are highly disfavored, the Court must ensure Rubin crossed her *t*'s and dotted her *i*'s procedurally. This isn't judicial nit-picking; it's a recognition of Fifth Circuit precedents favoring judgments on the merits rather than procedural technicalities. *See Sun Bank of Ocala*, 874 F.2d at 276. The Court's analysis is framed by the six *Lindsey* factors. *See* 161 F.3d at 893. As explained below, *Lindsey* supports default judgment here.

####    1.   Material Issues of Fact

Default judgments are improper where material issues of fact remain notwithstanding a defendant's default. *Lindsey*, 161 F.3d at 893; *see also id.* at 895 (considering only "purely factual material relating to the merits of the [claim]" (cleaned up)). No such issues exist here. As explained below, Carvi's default means the Court must assume the truth of Rubin's allegations (save those relating to damages). *See generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 n.9 (5th Cir. 2002). Yet Rubin came to bat, providing ample evidence to support the allegations in her Complaint. *See, e.g.*, ECF Nos. 1, 1-1, 1-2, 16. The factual contours of Rubin's claim are relatively limited, as she need only prove (1) ownership of a copyright in the Work and (2) Carvi's unauthorized copying of the Work. *See Feist Publ'ns. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 342 (1991). As detailed further below, the Complaint's uncontested allegations resolve any potential factual disputes vis-à-vis that bipartite showing. Accordingly, as no disputes of material fact remain for Rubin's claim, *see Feist*, 499 U.S. at 342, the first *Lindsey* factor favors default judgment. *See* 161 F.3d at 893.

####    2.   Substantial Prejudice

Default judgments are also improper if they would substantially prejudice a litigant's rights. *See Lindsey*, 161 F.3d at 893. Here, Carvi's refusal to engage the litigation process substantially prejudiced Rubin's rights. Rubin filed her Complaint on January 3, 2024. *See* ECF No. 1. She then went through process of obtaining local counsel (ECF No. 6),

3

reporting her case to the Copyright Office (ECF No. 7), perfecting service upon Carvi's (ECF No. 8), and requesting an entry of default from the Clerk (ECF No. 9). All told, Rubin has been stymied in vindicating her copyrights for over a year. *See* ECF No. 1 at 4 (noting Rubin discovered Carvi's infringement on March 14, 2022). And five months of that delay have involved active litigation.

Needless to say, needless delay is substantially prejudicial. *See Sun Bank of Ocala*, 874 F.2d at 276–77. As justice delayed is justice denied, every passing day adds insult to Rubin's injury—compounding the prejudice caused by Carvi's default. *See id.* On the flip side, nothing indicates Carvi's would be unfairly prejudiced by a default judgment considering they eschewed all previous opportunities to contest the allegations against them. Accordingly, this factor also supports default judgment here. *See Lindsey*, 161 F.3d at 893.

### 3. Clearly Established Grounds for Default

Default judgments can only stand on bedrock; a foundation of sand will not suffice. Because default judgments are "resorted to by courts only in extreme situations," the slightest uncertainty as to the grounds for default will defeat judgment. *See Sun Bank of Ocala*, 874 F.2d at 276. But Rubin has clearly established all grounds for default. *See* ECF Nos. 1, 10, 16. Because the grounds of Carvi's default are clear, this factor also supports default judgment. *See Lindsey*, 161 F.3d at 893.

### 4. Good Faith Mistake & Excusable Neglect / Harshness

While initially articulated as distinct, *Lindsey*'s "good faith mistake and excusable neglect" prong is inextricably intertwined with the "harshness" prong. All judgments are harsh for the losing party—default judgments even more so. But if the defaulting party defaulted because of a "good faith mistake" or "excusable neglect," a default judgment may be too harsh. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (collecting cases to show examples of "excusable" neglect). Here, the record is devoid of any evidence suggesting "excusable neglect" caused Carvi's default. They were served with process (ECF Nos. 5, 8) and had every opportunity to contest Rubin's claims. They failed to do so.

Whatever "excusable" neglect may mean, it doesn't mean outright refusal to litigate. Indeed, the Fifth Circuit has clarified that neglect isn't excusable where there's a "clear record of delay or contumacious conduct." *Sun Bank of Ocala*, 874 F.2d at 277. And that's what Carvi's has been by making no efforts to try this case despite Rubin doing everything in her power to move things forward. The Court doesn't know why Carvi's refused to litigate the case because they haven't entered an appearance or otherwise contacted the Court or Rubin's counsel. In any event, because nothing indicates Carvi's unresponsiveness is excusable, this factor also supports default judgment. *See Lindsey*, 161 F.3d at 893.

### 5. The Court's Obligation to Set Aside Default Judgment

The final consideration under *Lindsey* asks "whether the court would think itself obliged to set aside the default on the defendant's motion." *See* 161 F.3d at 893. This is inherently subjective, as one court may "think" something different from another under the circumstances of a given case. In any event, considering every other factor from *Lindsey* favors default judgment, the Court would be disinclined to change its mind if Carvi's moved for reconsideration. Accordingly, default judgment is procedurally proper under the *Lindsey* factors.

### B. Default judgment is substantively proper.

Default judgments must be warranted procedurally and substantively. *See Nishimatsu*, 515 F.2d at 1206. Having addressed procedural propriety, the Court now turns to the substantive merits of Rubin's claims. Even accepting the Complaint's uncontested allegations as true, the Court must scrutinize the pleadings to determine if a default judgment is warranted. *See id.* As explained below, it is.

As noted above, Rubin must prove two things to prevail on her claim: (1) she owns a copyright in the Work, and (2) Carvi's infringed the copyright. *Feist*, 499 U.S. at 342; *see generally* 17 U.S.C. § 501. She satisfies the first element by alleging (and verifying with evidence) her ownership of valid copyrights in the Work. *See* ECF Nos. 1, 1-2, 16-1. She satisfies the second element because Carvi's clearly displayed the Work on its website. *See id.* Pretty easy for a day's work.

5

Notably, Rubin alleges *willful* infringement. *See* ECF Nos. 1; 16 at 6–7. While the Copyright Act does not define "willful" in this context, the Fifth Circuit has clarified that an infringer acts willfully where "he knows his actions constitute an infringement" even if the actions were not malicious. *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). Here, because Carvi's subjective state-of-mind is unknown, the Court must determine whether Carvi's "should have known it infringed upon a copyrighted work." *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 392 (5th Cir. 2014). This is where default judgment starts to sting.

Had Carvi's responded to this lawsuit, it could have argued a willfulness finding is inappropriate or presented evidence that lessens its ostensible culpability. *See id.* But because they defaulted, Carvi's admits the truth of Rubin's allegations. *See Lynn*, 236 F.3d at 767. Rubin pleads willful infringement. *See* ECF Nos. 1 at 5; 16 at 7. And default also concedes the truth of willfulness allegations. *See, e.g.*, *EMI Apr. Mus., Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008) (Lynn, J.). Thus, the Court finds Carvi's willfully infringed Rubin's copyrights in the Work. Having found as much, the Court now turns to the appropriate measure of damages.

### C.     Rubin is entitled to $5,250 in damages.

The Court's presumption of the pleadings' truth for default cases ends with damages. *See Freeman*, 605 F.2d at 857. "Within the range defined by the statutory maximum and minimum, the court has virtually unfettered discretion in setting the damage award." *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 560 (N.D. Tex. 1997) (Sanders, J.) (citing *F.W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 231 (1952)). But because the Court cannot take Rubin at her word on damages, a claim for sum-certain damages must be accompanied by verified affidavits or other supportive evidence. *See Freeman*, 605 F.2d at 857. As a starting point here, owners of an infringed copyright may recover their actual damages incurred. *See* 17 U.S.C. § 504(b). The easiest measure of actual damages in cases like this is the "hypothetical license fee" for the relevant work. *See MGE UPS Sys., Inc. v. GE Cons. & Indus., Inc.*, 622 F.3d 361, 365 (5th Cir. 2010). The evidence suggests

6

Rubin would charge approximately $3,500 to license the Work for a year had Carvi's opted to legally portray the Work on its website. *See* ECF No. 16 at 9; *see also* ECF No. 16-1. This is the Court's starting point for a more fulsome damages computation, which is always a matter of "wide discretion" for the district court. *Jet Rumeurs*, 632 F. Supp. 2d at 625.

Rubin requests a 5X multiplier on the above amount, arguing $17,500 is appropriate given the loss of "significant value" Carvi's infringement allegedly caused the Work. *See* ECF No. 16 at 9. Exercising its discretion and drawing on some judicial common sense, the Court is disinclined to grant a 5X multiplier. Rubin has worked for some of the largest entities on the planet, including "Kellogg's, Quaker, Albert Culver, Ace Hardware, Lowes, General Mills, Target, Nieman Marcus, Home Depot, Kraft Goods, Ralston Purina, and Kodak." ECF No. 16-1 at 1. Carvi's is a family-owned painting service in the booming metropolis of Burleson, Texas. *See* ECF No. 1. While the Court understands the importance of protecting Rubin's intellectual property, it strains credulity to imagine any of the above entities would be turned off by the Work's display on a mom-and-pop website like Carvi's.

While "[s]carce images typically demand a much higher fee than common images," Rubin's declaration fails to identify any concrete evidence that "[t]he Work has lost significant value by the widespread and continuing dissemination resulting from [Carvi's] infringement." ECF No. 16-1 at 3. Accordingly, the Court finds a 1.5X multiplier is more appropriate under the facts of this case, resulting in damages of $5,250. Given the enormity of that figure for a business like Carvi's, the Court believes this figure also serves the deterrent purposes of damages in copyright-infringement cases. *See Broad. Mus., Inc. v. Tex. Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 698 (N.D. Tex. 2014) (Ramirez, M.J.) (noting courts must consider "the need in particular circumstances to advance consideration of compensation and deterrence" (cleaned up)). Carvi's can consider this a $5,250 lesson in not flippantly pasting images on its website without ensuring proper authorization.

For the above reasons, the Court **DENIES** Rubin's request for $17,500 in damages, but the Court **AWARDS** damages in the amount of **$5,250**.

**D.     Rubin is entitled to a permanent injunction.**

For infringement cases under the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Once infringement is established, a movant almost always satisfies the requisite injunctive-relief factors. *See* ECF No. 16 at 13 (collecting cases); *see generally DSC Commc'ns Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996) (requiring a movant to show the following to obtain a permanent injunction: "(1) actual success on the merits; (2) no adequate remedy at law; that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest"). "In short, an injunction is appropriate if liability has been established *and* if there is a continuing threat of copyright infringement." *Broad. Mus., Inc.*, 11 F. Supp. 3d at 696.

Turning to the facts of this case, the Court is mindful that injunctive relief is "never lightly given." *Posada v. Lamb Cnty., Tex.*, 716 F.2d 1066, 1070 (5th Cir. 1983). That's because injunctions are "a drastic and extraordinary remedy" that are not granted "unless the movant clearly carries the burden of persuasion." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 628 (5th Cir. 1985). Thus, Rubin's request for a permanent injunction involves not one but *two* extraordinary remedies. Courts disfavor default judgments. *See Sun Bank of Ocala*, 874 F.2d at 276. But Rubin satisfied the relevant showing to obtain one. Courts also disfavor injunctive remedies. *See Miss. Power & Light*, 760 F.2d at 628. But here too, Rubin establishes the requisite showing to get one.

Rubin satisfies her first injunctive-relief showing because she wins on the merits by virtue of this Order. *See DGI Tech.*, 81 F.3d at 600. Rubin satisfies the second because there's no adequate legal remedy for ongoing infringement of Rubin's copyrights in the Work. *See* ECF No. 16 at 13. She satisfies the third because the threat of ongoing infringement clearly outweighs the harm in forcing Carvi's to remove the infringing photo. *See DGI Tech.*, 81 F.3d at 600. And she satisfies the fourth because "the public interest is the interest in upholding copyright protections." *Warner Bros. Recs. v. Briones*, No. SA-05-CA-0075-XR,

8

2005 WL 2645012, at *7 (W.D. Tex. Sept. 20, 2005) (citation omitted). Because liability has been established and there is a continuing threat of infringement, the Court **GRANTS** Rubin's request for injunctive relief here. *See Broad. Mus., Inc.*, 11 F. Supp. 3d at 696.

### E. Rubin is entitled to $3,278.50 in attorneys' fees and $405.00 in costs.

Having determined an appropriate award of damages and injunctive relief, the Court now considers attorneys' fees and costs. Courts have discretion to award full fees and costs under the Copyright Act. *See* 17 U.S.C. § 505. It adds an additional incentive not to purloin intellectual property if you might have to pay for the other side's lawyers down the road. *See id.* And in the default-judgment context, it discourages evasion of the judicial process when would-be litigants know they'll foot the bill for the other side's case if they don't show up to court. As such, awarding fees and costs is "the rule, not the exception" for infringement cases in the Fifth Circuit. *See Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015). Rubin presents verified evidence of $675.50 in costs and $3,653.50 in attorneys' fees. *See* ECF No. 16-2 at 2; *see also* ECF No. 16-3 (SRIPLAW billing records). The Court takes each request in turn.

#### i. Attorneys' Fees

For attorneys' fees, Rubin submitted the contemporaneous billing records of her counsel at SRIPLAW, along with a verified affidavit in support thereof. *See id.* The records indicate the following professionals worked on Rubin's case for the following rates: Attorney Joel B. Rothman (0.3 hours at $595/hour); Non-Attorney Professional Tyler S. Unfer (1.2 hours at $175/hour); Attorney Craig A. Wirth (1 hour at $375/hour); Attorney Marian V. Quintero (7 hours at $350/hour); and Paralegal Rebecca Pollack (2.2 hours at $200/hour). *See id.* The Court turns to the familiar *Johnson* analysis to determine the reasonableness of these fees. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–

9

19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[2]

Step one in determining an appropriate fees award involves calculation of the lodestar—"the product of the number of hours reasonably expended on the litigation multiplied by the reasonable hourly billing rate." *LULAC*, 119 F.3d at 1232. The submitted billing records indicate Rubin's counsel expended 11.7 hours on this case. *See* ECF No. 16-3 at 3. That's eminently reasonable given the mammoth time entries of many attorneys in federal-court litigation these days. Aggregating the above hourly rates and dividing the total by 11.7 hours, the $3,653.50 requested comes out to approximately $312/hour for this case. There's not a judge in this District who could find that lodestar unreasonable with the price of modern legal representation; indeed, similar amounts have routinely been found reasonable. *See generally Koehler v. Aetna Health Inc.*, 915 F.2d 789, 799 (N.D. Tex. 2013) (noting "courts in the Northern District [of Texas] have approved regular hourly rates of $345, $350, and $375) (collecting cases). And that was in 2013.

Applying the *Johnson* factors to this figure, neither upward nor downward adjustment is necessary. The Court need not address each *Johnson* factor independently, especially because three of the four most important support the unadjusted lodestar. *See generally Migis*, 135 F.3d at 1047 (noting the most important *Johnson* factors are "the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel"). Apart from the customary fee (which is neutral here), the other factors discussed in *Migis* all support the reasonableness of the unadjusted lodestar. *See id*.

---

[2]These factors include: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the undesirability of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Johnson*, 488 F.2d 714, 717–19.

For the time and labor involved, Carvi's default gave Rubin's lawyers an easy gig. Indeed, Rubin's counsel obtained a successful resolution of their client's claim in a mere 11.7 hours. *See* ECF No. 16-3 at 3. All else equal, a roughly $3,600-payday is appropriate for that feat. Similarly, the amount involved was small because Rubin would have charged an amount comparable to her attorneys' fees to license the work to Carvi's. *See* No. 16 at 9; *see also* ECF No. 16-1. And the results obtained are favorable, as the Court awarded nearly double these fees in damages. *See supra*, p. 8. Finally, the unadjusted lodestar is reasonable considering Rubin's counsel is highly experienced in intellectual property litigation nationwide. *See* ECF No. 16-2 at 1–3. Accordingly, the Court sees no reason to adjust this lodestar upward or downward based upon the *Johnson* analysis.

But the lodestar's reasonability does not win the day for the full award Rubin seeks. Federal courts must always review attorneys' time records before accepting them as reasonable at face value. *See Koehler*, 915 F. Supp. 2d at 796–800. Having done so here, the Court notes $175 of the requested fees correspond to 1.2 hours of work by Mr. Tyler S. Unfer, a "Client Services Liaison" for SRIPLAW. *See* ECF Nos. 16-2 at 2; 16-3 at 3. While paralegal fees may be recoverable in an attorneys' fees award, the Court is unaware of precedent awarding *attorneys'* fees for services of a "Client Services Liaison." *See generally Vela v. City of Hous.*, 276 F.3d 659, 678 (5th Cir. 2001). The Court **DEDUCTS** those fees accordingly.

In addition, paralegal fees are recoverable to the extent they're "non-clerical" in nature. *See id.* Of the time billed by SRIPLAW paralegal Rebecca Pollack, the Court notes the following items are essentially clerical in nature:

- .50 hours billed on January 4 to "prepare civil cover sheet, Form AO121, summons(es) and certificate of interested persons-corporate disclosure";
- .20 hours billed on January 4 to "combine summons and complaint" and "send to process server";
- .20 hours billed on April 18 to "file ROS with the Court and move to next step"; and

11

- .10 hours billed on June 28 to "prepare draft invoice for final declaration motion."

ECF No. 16-3 at 3 (cleaned up). Thus, the Court further **DEDUCTS** one hour of Ms. Pollack's time.

Deducting the above amounts from Rubin's total request, the Court breaks down Rubin's recoverable fees as follows:

$3,653.50 (total)

− $175.00 (1.2 hours of Client Services Liaison)

−$200.00 (1 hour of clerical Paralegal work)

$3,278.50 in recoverable fees

Accordingly, the Court **DENIES** Rubin's request for $3,653.50 in fees and **AWARDS** $3,278.50 in reasonably incurred <u>attorneys' fees</u>. *See* 17 U.S.C. § 1203(b)(5).

*ii.    Costs*

Rubin also submitted evidence of $675.50 in costs. *See* ECF No. 16-3 at 4. These costs consist of (1) the $405 filing fee for this action and (2) a $270.50 process-server fee. *See id.* But process-server fees are typically not recoverable costs in the Fifth Circuit. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 253 (5th Cir. 1997). Accordingly, the Court **DENIES** Rubin's request for $675.50 in costs and **AWARDS $405** in <u>costs</u>.

## CONCLUSION

For the above reasons, the Court finds Plaintiff Laurie Renee Rubin's Motion for Default Judgment (ECF No. 16) should be and hereby is **GRANTED in part** and **DENIED in part**. Accordingly, the Court **AWARDS $5,250** in **damages**.[3] In addition, the Court **ORDERS** that Defendant Carvi's Custom Painting, LLC be **PERMANENTLY ENJOINED** from using the Work in any capacity or assisting other entities to use the Work in any capacity, without prior authorization

---

[3]Pre-judgment interest shall accrue on this amount as specified by TEX. FIN. CODE ANN. § 304.003 and will be reflected in the forthcoming Final Judgment.

from (and remuneration to) Plaintiff Laurie Renee Rubin. Finally, the Court **AWARDS $3,278.50** in attorneys' fees and **$405.00** in costs.

**SO ORDERED** on this **10th day** of **July 2024.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE